# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DR. MAHENDRA AMIN, M.D.

    Plaintiff,

v.

TAYLOR & FRANCIS GROUP, LLC,
JESSICA TILLIPMAN, GOVERNMENT
ACCOUNTABILITY PROJECT, INC., TOM
DEVINE, SAMANTHA FEINSTEIN, and
JOHN A. KOLAR,

    Defendants.

Case No. 1:25-01313-BAH

## PLAINTIFF'S RESPONSE IN OPPOSITION TO GAP DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND IN OPPOSITION IN PART TO GAP DEFENDANTS' MOTION TO TAKE JUDICIAL NOTICE

Defendants Government Accountability Project, Inc., Tom Devine, Samantha Feinstein, and John A. Kolar ("GAP Defendants"[1]) made false and defamatory statements about Plaintiff, Dr. Mahendra Amin, causing him harm. They did so with actual malice, that is, with knowledge and reckless disregard of the falsity of those statements. Dr. Amin's Complaint (Doc. 1) plausibly states a claim that he is entitled to relief. The GAP Defendants mischaracterize District of Columbia cases in arguing that a defamation action necessarily requires pleading facts showing a misrepresentation of a source of the information in the statements. District of Columbia law requires no such thing. However, Georgia law applies to this diversity action in

---

[1] The GAP Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 27) makes arguments which apply to the GAP Defendants as a whole, without particularized argument as to any specific Defendant. Accordingly, Dr. Amin responds by showing the sufficiency of his complaint as a whole.

which Dr. Amin's loss of reputation occurred, the state where he resides and works. But under

both Georgia and District of Columbia law as it stands, and not as the GAP Defendants

mischaracterize the law, Dr. Amin's complaint states claims for which relief can be granted

because he has alleged a false and defamatory statement about him, the statements were

published by the GAP Defendants, with negligence or actual malice, and Dr. Amin suffered both

special harm and actionability in the absence of special harm. Even if Georgia or District of

Columbia law required pleading facts that a speaker "misquote[] or "misrepresent[]" its

purported sources, Doc 27 at 17, which again they do not, Dr. Amin's complaint would *still*

survive the GAP Defendants' motion, because he does allege that the GAP Defendants

misrepresented the facts. Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 27)

should therefore be denied.

The GAP Defendants also move this Court to take judicial notice of documents, but their

apparent intended use for such documents—to adopt the factual contents of their chosen

documents as true—is improper, and accordingly the motion should be denied to the extent the

GAP Defendants attempt to adopt the factual contents of the documents as true.

## FACTUAL BACKGROUND

On April 30, 2024, the GAP Defendants published a book, *The Routledge Handbook of

Public Procurement Corruption*, in which a chapter contained multiple false and defamatory

statements of and concerning Plaintiff, Dr. Mahendra Amin, a private figure. Doc. 1 ¶ 1.

Specifically, the chapter falsely accused Dr. Amin of performing hysterectomies on women

detained by Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center

(ICDC), without the women's consent, which constituted "fraud and human rights abuses." *Id.* ¶

138; *see also* Doc. 27-1 at 5-6 (excerpt of chapter). The claims originally stemmed from allegations made by an ICDC nurse named Dawn Wooten, who did not observe Dr. Amin's treatment (which was conducted at his office, away from the detention center) and whose allegations have been widely discredited. Doc. 1 ¶ 1.

In fact, Dr. Amin only performed two hysterectomies, both of which were medically necessary, consented to, and independently reviewed and approved. Doc. 1 ¶¶ 7-10. Indeed, as the GAP Defendants knew prior to publication, multiple media outlets and investigations reported that the allegations of mass hysterectomies were inaccurate, and *all* procedures Dr. Amin performed for ICDC patients had to be cleared as medically necessary through an independent preapproval process. *Id*. ¶¶ 6, 11. Also, all procedures were consented to by the patients, as demonstrated by signed forms indicating informed consent. *Id*. ¶ 11.

The GAP Defendants were not merely reporting the allegations against Dr. Amin. GAP represents Ms. Wooten, the source they cling to, in various capacities, as her attorney, advocate, and even her press agent. *Id*. ¶ 17. Accordingly, the GAP Defendants were well aware of, but did not publish, reasons to doubt the allegations, including how discredited Ms. Wooten was as to the allegations she made about Dr. Amin. For example, the GAP Defendants knew, but did not publish, that multiple media outlets and investigations had reported that Ms. Wooten's allegations of mass hysterectomies were inaccurate. *Id*. ¶ 6. The GAP Defendants knew, but did not publish, that all of the procedures which Dr. Amin performed were approved by ICE's preapproval process and were supported with consent forms indicating consent. *Id*. ¶ 11. The GAP Defendants knew, but did not publish, that the United States Senate Permanent Subcommittee on Investigations contradicted Ms. Wooten's allegations by stating in a Report

that Dr. Amin had performed two hysterectomies and that both were medically necessary.  *Id.* ¶

13.  Accordingly, the GAP Defendants knew and/or recklessly disregarded the falsity of the

published statements at issue.

## LEGAL STANDARD

"In ruling on a motion to dismiss for failure to state a claim, the court accepts as true 'all

the [factual] allegations in the complaint . . . (even if doubtful in fact)' that 'raise a right to relief

above the speculative level.'"  *Wilson v. On the Rise Enter., LLC*, 305 F. Supp. 3d 5, 11-12

(D.D.C. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Those facts are

"taken in the light most favorable to the plaintiff and with all reasonable inferences drawn in his

favor."  *Hurd v. D.C. Gov't*, 864 F.3d 671, 675 (D.C. Cir. 2017).  "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  *Id.* at 12 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009).

In a diversity action, a court must "first decide the proper law of defamation . . . to

apply."  *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.C. Cir. 2001).  In courts within the

District of Columbia Circuit, "the weight of authority considers that the law to be applied is that

of the place where the plaintiff suffered injury by reason of his loss of reputation."  *Id.* (citations

and some punctuation marks omitted); *see id.* at 627-28 (applying District of Columbia law

where the defamation plaintiff worked in Washington, D.C. at the time the article was published

and both parties relied on District of Columbia law); *Hourani v. Psybersolutions LLC*, 164 F.

Supp. 3d 128, 140 (D.D.C. 2016) (applying Virginia law when the plaintiff was a Virginia

resident for whom any "injury he may have suffered due to the alleged torts occurred in Virginia, where he lives").

Under Georgia law, a claim for defamation has four elements:

> (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.

*ACLU v. Zeh*, 312 Ga. 647, 650 (2021).  Certain categories of statements are conditionally privileged, but such privilege is erased upon a showing of malice.  O.C.G.A. §§ 51-5-7, 9.

"[C]ourts routinely consider the publication containing an alleged defamatory statement when resolving a motion to dismiss," as well as documents not attached to a complaint but referred to in the complaint and integral to the plaintiff's claim.  *Mason v. Am. Prospect*, 2024 WL 4345855, at *4 (D.D.C. Sept. 30, 2024) (citations omitted).  However, such judicial notice is for the fact that the documents were published, and so courts do "not adopt the factual contents of the [documents] as true."  *Id*. (citations omitted).

## ARGUMENT

Dr. Amin plausibly states a claim for which relief may be granted.  The GAP Defendants' 21-page brief arguing the contrary is confusingly organized and repetitive, and it is accompanied by over 300 pages of extrinsic, mostly irrelevant material.  *See* Doc. 27 at 3-5, 7-12 (extensively but incompletely quoting various documents); Docs. 27-1, 27-2, 27-3, 28.  But the substance of the GAP Defendants' argument only makes up around three pages, introduced by a separate but overlapping 2.5-page summary.  The GAP Defendants argue essentially that, pursuant to District of Columbia law, (1) the GAP Defendants were merely tale bearers and not tale makers, and (2) Dr. Amin's complaint is merely "conclusory" as to falsity and actual malice; therefore, according

to the GAP Defendants, Dr. Amin's allegations that the statements are false are conclusory and therefore do not satisfy federal pleading standards. Doc. 27 at 14-19.

As an initial matter, as discussed below, Georgia, rather than District of Columbia, law applies in this diversity action for defamation in which Dr. Amin's reputation was harmed in Georgia, his place of residence and work. As to the GAP Defendants' first point, the law is clear that "[t]alebearers are as bad as talemakers." *Davis v. Macon Tel. Pub. Co.*, 93 Ga. App. 633, 640 (1956) (quotation marks omitted); *see also Amin v. NBCUniversal Media, LLC*, 2024 WL 3188768, at *16 (S.D. Ga. June 26, 2024) ("It does not matter that NBC did not make these accusations directly, but only republished the . . . allegations.").

To the GAP Defendants' second point, under Georgia law, Dr. Amin has plausibly stated defamation claims against the GAP Defendants. This includes allegations that the GAP Defendants were negligent, as required if the statements were not conditionally privileged and Dr. Amin is a private figure, which is exactly what Dr. Amin has alleged and the GAP Defendants have not even attempted to contradict. Doc. 1 ¶¶ 1, 16. Even if District of Columbia law applied, and even if Dr. Amin was required to allege actual malice rather than simply negligence, which as discussed above is not the case, the Complaint alleges facts that the GAP Defendants were not fairly reporting a proceeding but instead published false and defamatory statements with knowledge and/or reckless disregard of the falsity of the statements. Finally, judicial notice is appropriate to show the fact of a publication, but not the proof of contents therein, and so the GAP Defendants attempt to use judicial notice to establish the contents of documents is inappropriate and their motion for judicial notice should be denied.

I.    **Georgia law applies, and under Georgia law Dr. Amin has plausibly stated claims for defamation.**

Georgia law applies, and Dr. Amin has plausibly stated claims for defamation for which

relief can be granted.

A.  **Georgia law applies.**

Dr. Amin, a Georgia resident who works in Georgia, suffered injury in Georgia, and

accordingly Georgia defamation law governs here pursuant to District of Columbia choice-of-

law principles.  *See, e.g.*, *Weyrich*, 235 F.3d at 627-28 (applying District of Columbia law where

the defamation plaintiff worked in Washington, D.C. at the time the article was published and

both parties relied on District of Columbia law).[2]  This case is analogous to *Hourani*.  There, the

court ruled, "Plaintiff is a Virginia resident.  He has not alleged that he has any connection to the

District of Columbia.  Any injury he may have suffered due to the alleged torts occurred in

Virginia, where he lives.  Accordingly, Virginia law applies."  164 F. Supp. 3d at 140.  Likewise,

Georgia law applies to Dr. Amin's claims.

B.  **Under Georgia law, Dr. Amin has plausibly stated claims for defamation.**

Dr. Amin has plausibly pleaded facts from which relief can be granted as to his

defamation claims against the GAP Defendants.  Under Georgia law, a claim for defamation has

four elements:

> (1) a false and defamatory statement concerning the plaintiff; (2)
> an unprivileged communication to a third party; (3) fault by the
> defendant amounting at least to negligence; and (4) special harm or
> the actionability of the statement irrespective of special harm.

---

[2] The GAP Defendants' failure to address choice of law *at all* is all the more striking since they
cite *Weyrich* multiple times in their brief.  *See* Doc. 27 at 15, 17.

*Zeh*, 312 Ga. at 650.

As to the first element, a false and defamatory statement concerning the plaintiff, Dr.
Amin alleges that the statements accusing him of performing hysterectomies and other
gynecological procedures on women detained at ICDC without consent or necessity, accusing
him of alleged malpractice, and accusing him of being part of "fraud and human rights abuses,"
are false. Doc. 1 ¶¶ 138-39. He alleges that the statements are defamatory in that they impute
actions that injure his professional reputation, accuse him of crimes punishable by law, and
impute to him actions that are defamatory. *Id.* ¶¶ 144-46.

As to the second element, Dr. Amin further alleges that the statements were published to
third parties without privilege and that third parties actually viewed the statements. *Id.* ¶¶ 1, 178.

As to the third element, Dr. Amin alleges that the GAP Defendants published with
negligence. *Id.* ¶ 147. Although the GAP Defendants' motion makes no argument that Dr.
Amin is a public figure and/or does not otherwise argue that a conditional privilege applies
which would require Dr. Amin to plead actual malice, *see generally* Doc. 27, to the extent that
the motion can be read to argue he has not alleged actual malice, *see id.* at 2, 15, 18-19
(mentioning actual malice and implying it is the standard, but without ever showing or arguing
why), the GAP Defendants are wrong anyway. Dr. Amin alleges also that the GAP Defendants
published with actual malice, that is, knowledge of falsity, because the GAP Defendants "had
actual knowledge that the accusations against Dr. Amin were false prior to publication, as was
reported by widespread media coverage and the United States Senate Permanent Subcommittee
on Investigations which is cited in the chapter, and as the [GAP] Defendants knew through their
representation as advocate and press agent of Dawn Wooten." *Id.* ¶ 148. Dr. Amin alleges that

8

the GAP Defendants financially benefited from the statements, by "purportedly supporting their argument and making the book more salacious," further supporting the GAP Defendants' malice. *Id*. ¶ 150.  Dr. Amin alleges that it is "beyond reasonable belief that detainees in an ICE facility, such as ICDC, could undergo surprise hysterectomies without consultation and consent," and that "an ICDC would not even be referred to a health care provider outside of ICDC such as Dr. Amin without requesting treatment, ICDC staff referring the patient to the outside provider, and the patient voluntarily undertaking the treatment." *Id*. ¶¶ 108-09.  Therefore, even though the GAP Defendants have not shown or even ventured to argue that Dr. Amin must allege actual malice, he has alleged actual malice.

Finally, as to the fourth element, special harm or actionability of the statements irrespective of special harm, Dr. Amin alleges that the statements constitute defamation *per se* in that they accuse him of actions that injure his professional reputation and that are crimes punishable by law. *Id*. ¶¶ 144-45.  Dr. Amin also alleges that he has "suffered special damages, including but not limited to employment losses, medical treatment, and costs of reputational defense, which were the natural and proximate consequence of the language the Defendants used." *Id*. ¶ 180.

## II.     Even under District of Columbia law, the Complaint plausibly states claims.

Although Georgia law applies for the reasons discussed above, the same result would be required pursuant to District of Columbia law.  As discussed below, the GAP Defendants simply misstate the District of Columbia cases they cite.  Under District of Columbia law as it actually exists, Dr. Amin has plausibly alleged claims for which relief can be granted, as under Georgia

law.  Finally, *even under the GAP Defendants' inaccurate characterization of District of Columbia law*, Dr. Amin plausibly states claims for which relief can be granted.

### A.  Dr. Amin plausibly states a claim for which relief can be granted under District of Columbia defamation law.

Dr. Amin has sufficiently pleaded facts for which relief can be granted as to his defamation claim under District of Columbia law, as well as under Georgia law.  As does Georgia law, a claim for defamation in the District of Columbia has four elements:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009) (quotation marks omitted).

As to the first element, whether the GAP Defendants made a false and defamatory statement concerning the plaintiff, as discussed above, Dr. Amin alleges that the statements accusing him of performing hysterectomies and other gynecological procedures on women detained at ICDC without consent or necessity, accusing him of alleged malpractice, and accusing him of being part of "fraud and human rights abuses," are false.  Doc. 1 ¶¶ 138-39.  He alleges that the statements are defamatory in that they impute actions that injure his professional reputation, accuse him of crimes punishable by law, and impute to him actions that are defamatory.  *Id.* ¶¶ 144-46.

As further discussed above as to the second element, Dr. Amin alleges that the statements were published to third parties without privilege and that third parties actually viewed the statements.  *Id.* ¶¶ 1, 178.

As to the third element, as discussed above, Dr. Amin alleges that the GAP Defendants published with negligence. *Id.* ¶ 147. Although the GAP Defendants have attempted no effort to show that he must show actual malice, Dr. Amin has alleged actual malice anyway, for the reasons discussed in more depth above. *See, e.g.*, *id.* ¶¶ 17, 108-09, 148, 150.

Finally, as to the fourth element, again as discussed above, Dr. Amin alleges that the statements constitute defamation *per se* in that they accuse him of actions that injure his professional reputation and that are crimes punishable by law, and also he alleges that he has suffered special damages, "including but not limited to employment losses, medical treatment, and costs of reputational defense, which were the natural and proximate consequence of the language the Defendants used." *Id.* ¶¶ 144-45, 180.

In sum, although Georgia law should apply for the reasons discussed above, the defamation elements of District of Columbia law largely overlap. Accordingly, for the same reasons Dr. Amin has plausibly alleged claims for which relief can be granted as to defamation under Georgia law, he has also done so as to District of Columbia law.

**B. The GAP Defendants misstate the District of Columbia cases they cite, and even under their manufactured rules of defamation law Dr. Amin's complaint states claims for which relief can be granted.**

In urging that District of Columbia law bars Dr. Amin's claims, the GAP Defendants' summaries of the cases they cite are simply inaccurate as to nearly every single point for which they cite those cases. But even if District of Columbia defamation law matched the GAP Defendants' mischaracterizations, which it does not, Dr. Amin's complaint *still* plausibly states claims for which relief can be granted.

When the GAP Defendants finally begin their argument that Dr. Amin fails to plausibly allege claims for which relief can be granted, on page 17 of their brief, they first cite *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624-25 (D.C. Cir. 2001) and *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257 (D.D.C. 2017), for the broad premise that "courts hold that statements are not actionable when they merely summarize, characterize, or report allegations from disclosed sources." Doc. 27 at 17. As discussed above, that is not Georgia or District of Columbia law; nor is that even what those cases say. In *Weyrich*, the cited portion of the holding concerns not summarization of allegations from disclosed sources but rather the non-actionability of statements of *opinion*. Specifically, the United States Court of Appeals for the D.C. Circuit held that the phrase "began to suffer bouts of pessimism and paranoia" was not actionable as opinion but that false anecdotes which stated "verifiable facts," were actionable. *Weyrich*, 235 F.3d at 624-26.

Next, while the GAP Defendants adequately summarize the position that the defendants argued in *Zimmerman*, they fail to note that the *Zimmerman* court *rejected* that argument as to the statements at issue there, that two baseball players used performance enhancing drugs, ruling that "the argument that the challenged statements are not capable of conveying a defamatory meaning because the film establishes that [a non-defendant] is the messenger, and that [the defendants] are merely reporting that message, is *unpersuasive*, because a reasonable viewer could certainly have understood the documentary as a whole to be an endorsement of [the non-defendant's] claims." *Zimmerman*, 246 F. Supp. 3d at 277 (emphasis supplied).

Likewise here, the GAP Defendants described the "sheer size" of attorneys taking the case against Dr. Amin as "signif[ying] that the amount of public attention and outrage spurred by

12

Ms. Wooten's whistleblower complaint is significant," called it a "positive development[]" that ICDC "women stopped being referred to Dr. Amin," and complained that government procedures as to off-site medical treatment "do not go far enough to prevent similar problems from occurring in the future." Doc. 27-1 at 5; Doc. 1 ¶¶ 12, 134, 138. The GAP Defendants also cited a Senate Report but failed to note that the same Senate Report had, contrary to Ms. Wooten's allegations, found that Dr. Amin only performed two hysterectomies, both of which were medically necessary. Doc. 27-1 at 4-5; Doc. 1 ¶¶ 13, 127, 135, 148. The GAP Defendants also cited and discussed a lawsuit as evidence of the "significant" public attention and outrage against Dr. Amin, without disclosing that Dr. Amin had been dismissed as a defendant therefrom. Doc. 1 ¶¶ 12, 135, 138. This failure to "place [the] allegations in the context of any comparable exchange of charge and countercharge" was one factor why the *Zimmerman* court *rejected* the defendants' argument that the claim should be dismissed, because the statements were not *their* allegations. 246 F. Supp. 3d at 278 (quotation marks omitted). Similarly here, the GAP Defendants knew their source was wrong, but they repeated her and endorsed her statements about Dr. Amin anyway. This is more than sufficient to state a claim for relief for defamation under the laws of Georgia, or the laws of District of Columbia, even if they applied, which they do not.

Next, the GAP Defendants characterize *Farah v. Esquire Mag.*, 736 F.3d 528 (D.C. Cir. 2013) and *Afro-Am. Pub. Co. v. Jaffe*, 366 F.2d 649 (D.C. Cir. 1966) as explaining "that attributed reporting does not express independent factual assertions." Doc. 27 at 17. But *Farah* actually held that readers could not have taken an article which made fun of a book questioning President Obama's birth certificate literally because it was obviously satirical and fictitious,

*Farah*, 736 F.3d at 538, and the pages they cite from *Jaffe* reject the requirement of a "special damage" requirement into libel, 366 F.2d at 660.  And even if this were the law, which again it is not, as with *Zimmerman*, Dr. Amin alleges that the GAP Defendants demonstrated that they were making allegations that had the effect of weighing in.  *See* Doc. 1 ¶¶ 12-13, 127, 134-35, 138, 148.

The GAP Defendants next characterize *Mason*, 2024 WL 4345855, as providing that "the failure to allege misrepresentation of sources is fatal to the falsity element."  Doc. 27 at 17.  The specific pages the GAP Defendants cite concern judicial notice and general rule statements of defamation law in the District of Columbia, including that a plaintiff must "allege sufficient facts to create a plausible inference that an allegedly defamatory statement is untrue," with nothing about "misrepresentation of sources" there or anywhere else in the order.  *See Mason*, 2024 WL 4345855, at *4-6.  Also, again, here Dr. Amin *does* allege that the GAP Defendants misrepresented the information available to them, particularly the Senate Report, Dr. Amin's dismissal from the lawsuit the GAP Defendants cite as credibility of the false statements, and widespread reporting contradicting Ms. Wooten's claims.  Doc. 1 ¶¶ 6, 12, 13, 127, 135, 148

The GAP Defendants—still just on the first page of the substance of their argument— then cite three cases that they contend "reinforce[] that a defamation plaintiff must allege that the publisher itself made a false assertion," and they contend that "Plaintiff does not do so."  Doc. 27 at 17 (citing *Nunes v. WP Co. LLC*, 2022 WL 997826, at *3 (D.D.C. Apr. 1, 2022); *Robertson v. D.C.*, 269 A.3d 1022 (D.C. 2022); *BYD Co. Ltd. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1 (D.D.C. 2021)).  As an initial matter, as discussed elsewhere herein, Dr. Amin of course does allege that the GAP Defendants themselves made false assertions.  *See, e.g.*, Doc. 1 ¶ 138.  But the cases the

GAP Defendants cite simply do not say that publishers are blameless unless they misrepresent a source. *See Nunes*, 2022 WL 997826, at *3 (requiring in the plaintiff's defamation by implication case that he allege facts showing the defendant intends or endorses the defamatory meaning); *Robertson*, 269 A.3d at 1031-32 (holding that statements that were not false and did not imply anything defamatory were properly dismissed); *BYD*, 554 F. Supp. 3d at 8-9 (considering whether the public figure at issue had pleaded actual malice).

The GAP Defendants next state that the United States "Supreme Court has made clear that when a publication describes allegations while identifying the sources for those allegations, the publication is not asserting the underlying claims as true." Doc. 27 at 17 (citing *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991); *Phil. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986)). Again, such a categorical rule is simply not supported by the cases the GAP Defendants cite. In the GAP Defendants' cited section of *Masson*, the Supreme Court held that minor inaccuracies do not amount to falsity but rather the issue is whether "the substance, the gist, the sting, of the libelous charge be justified;" there is nothing about an identified source, and indeed at issue there was the alleged deliberate alteration of the words uttered by the plaintiff. 501 U.S. at 517. The cited portion of *Hepps*, in turn, holds that "the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern," and a plaintiff bears the burden of proof as to falsity. 475 U.S. at 776-77. Again, there is nothing in these cases which provide for blanket escape from liability upon the identification of sources, particularly where, as here, the GAP Defendants misstated the actual known information such that they defamed Dr. Amin.

The GAP Defendants *next* state that two United States D.C. Circuit opinions "likewise indicate that accurate summaries of public allegations or proceedings are not actionable." Doc. 27 at 17-18 (citing *Montgomery v. Risen*, 875 F.3d 709, 713-14 (D.C. Cir. 2017); *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1140, 1150 (D.C. Cir. 1994)). But *Montgomery* concerned the court's determination that "[s]ummary judgment on the attendant tort claims is fully supported given the opinion or hyperbolic character of some statements and [the plaintiff]'s failure to put the remaining statements' falsity at issue." 875 F.3d at 713-15. And in *Moldea*, the United States D.C. Circuit held that the district court erred by dismissing the suit, holding that "it is the jury's province to determine whether the publication was sufficiently false so as to have defamed the plaintiff." 15 F.3d at 1140, 1150. Again, there is no umbrella protection for summaries of defamatory allegations, and again Dr. Amin's claims that the GAP Defendants defamed him arises precisely because he alleges that the GAP Defendants were *not* accurate and that they knew their source (their own client Ms. Wooten) was wrong.

Next, finally reaching the second page of their arguments, the GAP Defendants cite multiple (non-D.C. Circuit) cases standing for the unremarkable rule that "conclusory assertions of falsity do not satisfy federal pleading standards." Doc. 27 at 18. But the "conclusory" allegations in all of those cases were allegations of *actual malice*; in none of them was it about falsity. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-04 (11th Cir. 2016); *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014). Actual malice is not at issue in the GAP Defendants' motion, because the GAP Defendants make no argument that Dr. Amin is a public figure or that a conditional privilege applies. But in any event, Dr. Amin has alleged the GAP Defendants' publication with actual

16

malice, or knowledge or recklessness of falsity, and he has done so by alleging how the GAP

Defendants knew and/or recklessly disregarded the falsity of their statements.  For example:

> The [GAP] Defendants had actual knowledge that the accusations
> against Dr. Amin were false prior to publication, as was reported
> by widespread media coverage and the United States Senate
> Permanent Subcommittee on Investigations which is cited in the
> chapter, and as the [GAP] Defendants knew through their
> representation as advocate and press agent of Dawn Wooten.

Doc. 1 ¶ 148.

The GAP Defendants then cite *U.S. Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 30

(D.D.C. 2022) for the proposition that Dr. Amin's complaint must be dismissed because he

"pleads no facts showing that Defendants misrepresented any source or that any statement in

Chapter 15 was false at the time of the publication."  Doc. 27 at 18.  As with the cases discussed

above, nothing in *Byrne* supports a requirement that Defendants misrepresent sources, and at any

rate, as discussed above, Dr. Amin has alleged both that Defendants did misrepresent the

proceedings and that statements were false at the time of the publication, as they knew.

The GAP Defendants then cite *Twombly* and *Iqbal* pleading standards accurately, but in

stating the unremarkable rule that these standards apply to defamation cases, they remarkably

cite a *summary judgment* case, which of course does not apply *Twombly* and *Iqbal* but instead

the factual record the parties developed in discovery.  *See* Doc. 18-19 (citing *Kahl v. Bureau of

Nat'l Aff., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017)).  But the requirement that the allegations in

the complaint be plausibly pleaded of course does apply in this case, and as discussed above Dr.

Amin meets that burden under both Georgia and District of Columbia law.

Finally, the GAP Defendants cite several cases for the proposition that there is a "special

constitutional protection afforded to such commentary" as the GAP Defendants'.  Doc. 27 at 19.

17

But that protection is enveloped in the general rules of pleading; there is no separate burden other than to plausibly plead the elements of his claim, which Dr. Amin has done. Even in this section, the GAP Defendants again mischaracterize the cases they cite. For one, *White v. Fraternal Order of Police* does require a publication to suggest "that the defendant *intends* or *endorses* the defamatory inference," but only in the "defamation by implication" context in which a "communication, viewed in its entire context, merely conveys materially true facts." 909 F.2d 512, 518 (D.C. 1990). The other cases the GAP Defendants cite in purported support of this position are also defamation by implication cases. *Fells v. Serv. Emp. Int'l Union*, 281 A.3d 572, 586 (D.C. 2022); *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000). Here, in contrast, Dr. Amin alleges that the *facts* the GAP Defendants published are false, and therefore this is not a defamation by implication case. Again, though, even if it were or Dr. Amin were otherwise required to allege endorsement or intent, he has done so: for example, the GAP Defendants described the "sheer size" of attorneys taking the case against Dr. Amin as "signif[ying] that the amount of public attention and outrage spurred by Ms. Wooten's whistleblower complaint is significant," described as a "positive development[]" the fact that ICDC "women stopped being referred to Dr. Amin," and complained that government procedures as to off-site medical treatment "do not go far enough to prevent similar problems from occurring in the future." Doc. 27-1 at 5; Doc. 1 ¶¶ 12, 134, 138.

### III. The exhibits should not be judicially noticed as evidence of the truth of the factual contents therein.

The GAP Defendants also attach several documents to their motion, to which they request the Court take judicial notice. Doc. 27 at 5-6. Their intended use of the documents is unclear, as they attach the documents as separate filings but also excerpt broad portions of the

documents in their brief in purported support of their motion to dismiss for failure to state a claim, but without subsequently referencing the content of these documents in their argument. *See id*. at 6-12; *id*. at 15 ("Fourth, the Court may consider Exhibits 1-3 under incorporation-by-reference and judicial notice doctrines."). Thus, the GAP Defendants seem to intend the Court to consider the factual contents therein—particularly that any facts are true or untrue—which is an inappropriate use of judicial notice, and the motion should be denied.

"[C]ourts routinely consider the publication containing an alleged defamatory statement when resolving a motion to dismiss," as well as documents not attached to a complaint but referred to in the complaint and integral to the plaintiff's claim. *Mason v. Am. Prospect*, 2024 WL 4345855, at *4 (D.D.C. Sept. 30, 2024) (citations omitted). Exhibit 1 is the publication at issue in this case. To the extent the GAP Defendants attach it to show the entire publication thereof, Dr. Amin agrees that it is appropriate for judicial notice. *But see generally* Doc. 27 (not citing Doc. 27-1 in its argument at all).

Doc. 27-2 is the demand letter and attachments Dr. Amin delivered to the GAP Defendants before filing suit in an effort to avoid litigation. It is unclear what import the GAP Defendants attach to the letter or the attachments, which would appear to have no relevance to the sufficiency of Dr. Amin's pleadings, and the GAP Defendants simply very briefly describe a few of the contents, without any reference to anything in Doc. 27-2 in their argument. Doc. 27 at 6; *see generally id*. This vagueness makes responding to the GAP Defendants' motion difficult. Some of the attachments are referenced in the complaint, such as the Senate Report which predated the GAP Defendants' publication which concluded that Dr. Amin had only performed two hysterectomies, both of which were medically necessary. Doc. 1 ¶¶ 13, 127, 135, 148. To

the extent that documents are referenced in and integral to the complaint, Dr. Amin agrees that they are appropriate for judicial notice as to the fact of publication, but not for the adoption of the factual contents therein as true.[3]  *Mason*, 2024 WL 4345855, at *4.  The same is true as to Doc. 27-3, an order in which Dr. Amin was dismissed as a defendant in a case discussed in the GAP Defendants' defamatory statements, the month before the publication of those statements.[4]

However, such judicial notice is for the fact that the documents were published, and so courts do "not adopt the factual contents of the [documents] as true."  *Mason*, 2024 WL 4345855, at *4 (citations omitted).  The GAP Defendants appear to concede this in their motion, stating that the judicial notice of Doc. 27-2 is "for the fact of . . . publication" and Doc. 27-3 is "for the fact of its issuance and procedural posture."  Doc. 27 at 5-6.  But then they simply excerpt seemingly random portions of these documents, without even referencing them in the actual argument portion of their motion.  *See generally id*.  To the extent this constitutes an effort to argue or imply the truth of any of these portions, the Court should "not adopt the factual contents of the [documents] as true." *Mason*, 2024 WL 4345855, at *4 (citations omitted).

## CONCLUSION

In sum, even if District of Columbia law applied, the GAP Defendants' manufacture of what that law says does not.  And, strikingly, under Georgia law, District of Columbia law as it

---

[3] This is the case even though such adoption would be helpful to elements of Dr. Amin's claims.

[4] The GAP Defendants confusingly describe the order as "denying Amin's dismissal with prejudice of the allegations made against him" and relay segments of the factual background section of that order.  Doc. 27 at 10-12.  However, as the Court here must do, the *Oldaker* court accepted the allegations as true and drew all reasonable inferences in favor of the plaintiff, and **Dr. Amin's motion to dismiss was granted and he was dismissed from the action.**  Doc. 27-3 at 1.

actually is, and *even under the manufactured standard of the GAP Defendants*, Dr. Amin has

plausibly stated a defamation claim from which relief can be granted.  The GAP Defendants'

motion should be denied.

       This <u>2nd</u> day of December, 2025.

***/s/ Stacey G. Evans***
Stacey G. Evans
*Pro hac vice*
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Ryan E. Harbin
*Pro hac vice*
Georgia Bar No. 370658
rharbin@staceyevanslaw.com
J. Amble Johnson
*Pro hac vice*
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com
STACEY EVANS LAW
729 Piedmont Ave NE
Atlanta, GA 30308
Tel.: (404) 850-6750

Sanjay S. Karnik
D.C. Bar No. 998684
skarnik@cglawfirm.com
CHILIVIS GRUBMAN LLP
159 N. Sangamon St., Ste. 313A
Chicago, IL 60607
Tel: (872) 260-6679

Joseph F. Siegelman
D.C. Bar No. 1024736
jsiegelman@cglawfirm.com
CHILIVIS GRUBMAN LLP
1834 Independence Square
Atlanta, GA 30338
Tel.: (404) 233-4171

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby state that I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO GAP DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND IN OPPOSITION IN PART TO GAP DEFENDANTS' MOTION TO TAKE JUDICIAL NOTICE** with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to the attorneys of record.

This <u>2nd</u> day of December, 2025.

*/s/ Stacey G. Evans*
Stacey G. Evans

*Counsel for Plaintiff*
